our next case to be argued, 21-1459, United States v. Cherry. And I'm going to ask Judge Nathan to come forward and present the case. Just one minute, counsel. Let everybody settle in. Welcome, everyone. Thank you. Thank you, Judge Nathan. Good morning, Your Honors. Just one moment, please. Oh, I'm sorry. That's all right. All right. Go ahead, counsel. Thank you. Sorry about that. Thank you again, Judge Nathan. Good morning, Your Honors. May it please the Court. My name is Daniel Nutter. I represent the defendant appellant, Mr. David Cherry. This Court and the Supreme Court have set out a two-part process that witnesses need to satisfy in order to evoke the Fifth Amendment. And the first step of this process, as this Court explained in the Boy case, which I think is squarely on point and controls this case, is that the witness herself must assert the claim that answers to questions might reasonably implicate her in a crime or provide evidence leading to proof of criminal behavior. And when the witness fails to satisfy that prima facie claim as set out in Boy, excuse me, as set out in Castigar, what the Boy court holds is you don't even go on to the second step. So your argument, Mr. Nutter, is that the specific articulation in the counsel's assertion of the right constrains the invocation of the right? Is that a fair description of your argument? Because, of course, it was asserted here. Well, certainly in the facts of this case, I would say that that's true, because I don't think it's enough to merely say the words Fifth Amendment. I think what Boy says is what you need to say. You need to have the substance of the Fifth Amendment. You can't say I'm pleading the Fifth Amendment because I think the moon is up. Let's suppose that you are right and that you cannot claim the Fifth Amendment for future perjury. I'm not sure of that. So some circuits have held. We have not held. And let's suppose you are right that under Boy, if there isn't a claim that is valid, the court cannot go on its own and give it its own validity. Why was this harmful? Isn't it manifestly clear that the judge did not believe DuPain and believed Morton and would have done exactly the right thing? Now, he does say something about cross-examination, which would be different, but he gives three different reasons beyond that that this made no sense. And so isn't it in the end really, if there were error, harmless? Thank you, Judge Calabresi. Two main responses to that, one sort of more general and one specific. The general rule is, I think, something that every jury is instructed on at the beginning of every case. It's literally instruction 1-1 in the modern federal jury instructions, which is made in borderline. We know from experience that frequently we'll hear a person give a version of an event that sounds most impressive and even compelling. And yet when we hear another person's version of the same event, what seems so compelling and impressive may be— This isn't a jury. This is a sentence. No, but I'm sorry to interrupt. That's correct, but I think the same fact-finding notions apply. We wait to draw a conclusion until we've heard all the evidence. Now, here the district court was under a false impression. And it is, I think, a clearly counterfactual impression. The terrain never objected to the idea of why are we traveling north up to Yonkers or Westchester or whatever, when it's clearly there multiple times, starting at page 115 and going through page 117 of the appendix, where there's testimony about how he is totally unclear about why they're going north. He texts Cherry about it because he doesn't know Morton directly. Cherry then asks Morton about it. There's even a question to Cade or Caid himself, or maybe it's, I guess, Cade or Caid asks Morton, are you even going to get into this club? Look, you're dressed in a hoodie. Are they going to let you in? And Terrain says, you know, and Morton responded, oh, yeah, because I know I'm friends or something with the bouncer. So there was, in fact, a whole discussion about the very thing that the district court says, well, this made no sense because why were they driving up there if they thought they were going to a party? So that is addressed there. And again, part of the reason Judge Collip raised why there is this harm and prejudice is because, in contradiction with Morton, Terrain was never able to testify up there under oath, be able to respond to some of the questions about whether he might be lying because he's a friend. Terrain had nothing to gain by lying in this case other than his friendship. Morton, of course, had this massive cooperation agreement. If we're going to look at what the motives to lie are, I'm sorry, do you want to ask my question? So, I mean, look, I appreciate that Terrain's counsel leads with the perjury as the ostensible Fifth Amendment, as the ostensible incrimination risk. He says we believe the biggest problem is that the government has represented that they have a different view of events. And then the conversation takes a different turn, and Judge Garthie puts a label on the obvious, which is there's this other problem. You were in a car headed to an improbable location at which an attempted murder takes place. And from that point on, Terrain's counsel never says, no, no, no, we disclaim that. Implicitly, Terrain's counsel is accepting Judge Garthie's, if you will, addition of different grounds for incrimination. Number one, why isn't that a sufficient, if unusual, way for counsel, in effect, to adopt a viable self-incrimination theory? And number two, assuming we were to remand, is there any world in which he doesn't now again invoke on the proper grounds identified by Judge Garthie? OK, so to answer your first question, first, Judge Engelmeyer, I don't think this court or any court has ever found and adopted evocation of the Fifth Amendment. And I would say that— Well, no, no, but it's invoked. It's that Judge Garthie, in the course of a colloquy, adds an additional fairly self-evident ground of potential self-incrimination. You were in the car leading to the attempted murder. Your admission of same could help. It could tend to incriminate you for that event. Well, again, first of all, Ms. Gottlieb had testified that she told the court, I have no idea what the government possibly thinks is perjurious here. So unless she was misrepresenting herself to the court, I mean, that's a statement. She's not just being court. She is literally making an express adoption that we have no idea about this. And there's further discussion. Well, why isn't this case different from Bowie in the sense that the judge says something and counsel can be taken to have adopted it? It doesn't have to be that definite. Why isn't this just not the court on its own doing this but suggesting that there is more than what the lawyer originally said and no denial of it? Well, Judge Calabresi, I would answer that first by pointing to United States v. Lumpkin, which I cite in the brief. I won't give the whole citation here. But which talks about the necessity of close scrutiny of all of these claims precisely because when a witness is able to evoke the Fifth Amendment in these contexts, it deprives the defendant of the fundamental element of the due process of law, according to the Washington v. Texas case, the fundamental element of the due process of law to subpoena exculpatory testimony. So to the extent that there's any question if the rule of the test could go one way or the other, I would say that it's been decided. The finger on the scale is saying that there has to be this extremely close scrutiny. And so we're not just going to sort of adopt by silence, as we suggest might otherwise be the case. Maybe if this were a civil case, that might be maybe a more acceptable rule. But I think given the extraordinarily important Sixth Amendment rights that Cherry has in this case, it would not be appropriate. All right. So but do you have – provided that Torain had said what Judge Gardefee had said, would you have any basis to contend that that had been an improper invocation of the Fifth Amendment? Well, actually, yes, I would for two reasons. First of all, because in that second part of the process, we've mostly argued that the first process, not being satisfied means we don't even get to the second. But even under that second prong, I'd say, first of all, because the bases that the court relied on are counterfactual, but also because there's this whole statute of limitations issue. But RICO and the prosecutions of other people for ostensibly otherwise time-barred events in this very case that were saved by RICO, is the Gardefee answer to that? What's wrong with that? Well, the answer is because literally no one – I mean, there are seven cooperating witnesses who testified at the trial. Not a single one mentions Torain in any connection with that. The government themselves admit that they have no evidence. They don't disclaim that they might be able to find evidence somewhere down the line. But they admit that as they stand there on that day, they have no evidence that he's involved in any continuing thing that goes beyond the five years. Which is precisely why his admission of being in a car going to a place that's otherwise inexplicable, except as a site of a murder, would be so damaging. The issue is given the deferential standard when somebody invokes, are you really saying that you would have had a basis to challenge as unsustainable an invocation based on the exposure to liability for participation in an attempted murder? I think at the very least there would have had to have been a colloquy about that with the attorney, especially since the attorney, again, has made an explicit representation to the court that she does not know anything about this perjury statement that she possibly believes could do this. So if the district court is going to find that, I don't think it's enough for the district court just to assume it. At the very least, there has to be some formal and explicit acknowledgment of Torain or his attorney. One question. Is it that clear that perjury is not a ground? Future danger of perjury is not a ground for the fifth? I mean, you know, this fellow was in danger. And I know some courts have said that isn't. But again, shouldn't one ask that in context, perjury in context of other things that are going on around? So that when this person says perjury in the future, he's talking about things which are really dangerous to him. And the fifth should be read broadly. Well, I think to answer that, first of all, as noted in the brief, every court to consider this, which at least is the fifth, eighth, and ninth, have all decided that. But beyond that, the Supreme Court has rendered a couple of opinions that are very closely on point, if not 100 percent on point. One is United States v. Apfelbaum, that's A-P-F-E-L-B-A-U-M, 445 U.S. 115, the pinpoint at 131. My point is that we're doing something a little silly if we focus perjury or this rather than look at the context. And that in the context of this case, this person was looking to the fifth and had good reason to do it. And perjury is one part of what he is saying, but it is perjury in a context. And then you get the judge coming back and saying, here's what's going on. And then taken together, that's a perfectly acceptable ground for the fifth. I know I'm well over my time, but may I just answer that? You may. What I would suggest respectfully, Judge Calabresi, is that that isn't the context, certainly not the only context you could view this in. I think the correct way of this context is that Terrain has been far away from any of these dangerous individuals for a while. He's in an employment situation. He feels that he's being at least leaned on by the government not to testify. He's already expressed that he's afraid of these violent individuals. No one disputes that he has seen Morton attempt to murder someone right in front of him. Morton, who by his own, like, admission is an evil maniac and a violent sociopath, he has nothing whatsoever to gain out of testifying. And what he would like to do, as is pretty clear on the record, is not have to testify if he can at all help it. The government has come and said, if we don't believe what you are testifying in terms of exculpatory evidence, we might bring a paltry prosecution against you in the future, which is just witness intimidation. So the context is that he just does not want to testify, as many witnesses don't want to, but which the Sixth Amendment ordinarily means that they have to when there's a subpoena, unless there really truly is, under the close scrutiny that the Fifth Amendment requires, this two-prong test being met, that this really would have a real risk, not a mere speculative possibility of resulting in perjury. Thank you. Thank you. Nooter, you do have two minutes for rebuttal. You're from the government. Good morning. May it please the Court. Allison Nichols for the United States, and I also represented the United States in the district court below. David Cherry is not entitled to resentencing, and there is no basis to disturb Judge Gardefee's considered factual findings that the defense witness's assertion of the Fifth Amendment privilege was entirely appropriate in the context of this case. If we take just what counsel said at the time, would that be sufficient basis for invocation? Meaning, Your Honor, if there had been no further colloquy and factual record as developed by Judge Gardefee? My government thinks the earlier account is not truthful, and so there's a perjury risk. I think, Your Honor, that's a closer question. I'm not entirely sure how it would come out, but I don't think it's necessarily the case that it would be insufficient. That's not the case that we have before us, of course, but I think what we have to look at is first the exact words that the witness's counsel used, which Judge Engelmeyer quoted a moment ago with my adversary, which is what she said first is the biggest problem is that the government has a different view of the events. And then she went on to reference perjury, but I think actually, tacitly, the problem with the government having a different view of the events is that if his prior conversation, recorded conversation with defense counsel, was inaccurate and not truthful, then the truth actually could subject him to a reasonable fear of prosecution because the truth, as Judge Gardefee found, could be that he was in the car for a nefarious or potentially criminal purpose. But shouldn't Judge Gardefee then have said, are you saying that you are afraid of prosecution rather than something that looks a little bit difficult under Bowie? I think Bowie is a very different case, Your Honor, and I actually think that Judge Gardefee did exactly what a district judge should do in these circumstances because as the Supreme Court has held, as this court has held, there is a big concern that forcing a witness, even through counsel, to proffer the factual basis for the invocation can come dangerously close to forcing the witness to waive the rights that he is otherwise trying to protect. But there would have been a remedy for that. Judge Gardefee could have had counsel in camera make a proffer as to what the factual basis was for perceiving self-incrimination. Judge Gardefee certainly could have proceeded that way, Your Honor. I think there's no reason why he had to. I think that it is for the court to say whether the witness's silence is justified. That's black-letter law. And here, Judge Gardefee went ahead and laid in the record based on his knowledge of the case. And I think it's worth emphasizing that after the first initial remark referencing perjury, that was not discussed further by any of the litigants or the court at any other point. And that also distinguishes this case from the Bowie case. I think it's important. Was there anything that Terrain's counsel did after Judge Gardefee identified the alternative substantive liability theory of self-incrimination? Was there anything that Terrain's counsel did that arguably incorporates by reference or adopts what Judge Gardefee says in the colloquy? I think that the pattern of invocation that followed, Your Honor, clearly shows that she- Tell me, what does that mean, the pattern of invocation? It sounds good, but tell me specifically what it means. It means, Your Honor, that Mr. Terrain did not invoke as to every single question that was asked. Many of the questions that were asked, but not every single question. He invoked as to questions about the Cade shooting as well as questions about what he had previously told counsel about the Cade shooting. And then on cross-examination, he later invoked as to open charges that he had in Vermont. But that, what I'm calling the pattern, I think shows that he did and his counsel did adopt the framework that Judge Gardefee- Let me be clear. You're saying that how he invoked specifically the fifth suggests that he bought what Judge Gardefee defined the issue. Absolutely, Your Honor. Judge Gardefee said- Well, would it be any different if still in counsel's head is a fair perjury? It wouldn't be any different, the pattern of invocation, would it? I'm not sure, how does the pattern of invocation tell us whether Terrain's counsel is thinking, my client's at a risk of perjury versus my client's at a risk of criminal liability as a result of testimony about the murder? I think that's a fair point, Your Honor. I think what we have to focus on, though, is that Judge Gardefee teed up the issue in the following way. He said the issue from a Fifth Amendment perspective is whether Mr. Terrain could face jeopardy as a result from the fact that he was in the vehicle with Terrain Morton and the victim on the trip up north of the city. And no one disputed at any point that that was the issue, including Mr. Chair. And so I think if we look through the actual chronology here, it's very different than the Bowie case. First, ahead of the hearing, Terrain indicated through counsel in a conversation with Mr. Cherry's counsel that he intended to invoke. And I'd like to address the allegation that just occurred at the end of my adversary's argument that there was witness intimidation here. First of all, that was not argued in any of their briefs, and there is absolutely no basis in the record to make such an allegation. Judge Gardefee explicitly found that no witness intimidation had occurred. Counsel's arguments misstated the record. And in fact, counsel for Terrain, after Judge Gardefee had ruled that witness intimidation did not occur, went out of her way to explicitly say, and by the way, judge, we agree with that ruling. We are not alleging that that did not happen. So I think that's important to know. The invocation was discussed then at the hearing prior to the witness's testimony. The witness then took the stand. He answered some questions through Cherry's counsel, had posed on direct examination, and he first invoked when asked a question related to his prior discussion with Cherry's counsel about the cage shooting. He answered some additional questions. He invoked three more times, again, each time in reference to the cage shooting, and that is when Cherry objected and called the sidebar that we had just been discussing. What would be so bad of our sending it back to ask whether Terrain would invoke the fifth on the basis of broader grounds? It's a slightly different one of these vacatures without really vacating to find out information. But what would be so bad if we did that? Terrain presumably would then, if what you describe him as doing, invoke the fifth, and we would then affirm on that ground. If for some reason at that point he said, no, no, I wouldn't invoke the fifth, then it would be a different case. Now, I'm not saying we should do that, but what would be so bad of doing what we sometimes do when there's lack of clarity? Yeah, I think in the specific context of this case, there wouldn't be any sort of harm in doing that, because I think Your Honor's right. We would just see a more clear invocation. But I think the harm writ large and in the law would be that what Judge Gardefee did was entirely consistent with what the law is instructing judges to do in this situation, which is that when the incriminatory nature of the answer is not readily apparent, then the witness must explain how the answer may incriminate him. And here, it was readily apparent. And Judge Gardefee made considered, specific, lengthy factual findings about that. And so to send back this case when we have such a well-developed factual record would send absolutely the wrong message to district courts who are grappling with these questions and who feel that they have a clear understanding of how the witness's answer might incriminate him, but they feel compelled to make an even further record, which then results in the witness waiving his rights. Does the fact that there had been an intervening trial of the co-defendants involving the attempted CAID murder in front of Judge Gardefee, is that at all relevant to how we assess Judge Gardefee's conduct of the invocation hearing? I don't... I mean, he was familiar, ultimately, with the underlying events and what he knew, at least from others' perspective, what happened on that car ride and at the end of it. Yes, Your Honor. I think it does inform Judge Gardefee's understanding, including his understanding of the relevance or not of the five-year statute of limitations, the context of the size of the gang, the types of criminal activity involved in by gang members, the fact that he had heard, in abbreviated fashion, a recounting of this very incident already at that trial. I think that absolutely informs how we view Judge Gardefee's development of the facts. Are you making that as an argument that even if this was error, it was harmless, because Judge Gardefee knew enough of what was going on, so that Turain could have testified a thousand times and it wouldn't have made any difference, despite what he said, what Gardefee said, about not subject to cross? Yes, Your Honor. If there were error here, which there wasn't, it would be harmless. And we know that from Judge Gardefee's own opinion here. He talked about the witness's bias as a longtime friend who owed sort of a debt of loyalty to him. But he did also mention cross. Yes, he did, Your Honor. He did. And he specifically talked about the fact that the other witness, Thomas Morton, had been subject to hours and hours of cross-examination, including on this very topic. And if you look through the record at Morton's testimony, including his direct testimony, it's extraordinarily detailed. He was interrupted by the court during the Fatico hearing multiple times to describe in slower and more detail exactly what happened that night. Where were you standing? What hand was the gun in? What hand was on the door? Where was Turain? Where was Cherry? Where was the victim? And he went through it very carefully. And nothing about what Turain may or may not have said, I think, would have actually changed the court's credibility assessment of the testimony of that witness. Thank you. Thank you, counsel. All right. Thank you, Your Honor. Rebuttal from Mr. Newton. You have two minutes. Thank you again, Judge Nathan. Just two or three quick things I want to respond to the questions that you asked. First, in terms of this question about the cross-examination that I think both Judge Engelmeyer and Judge Calabresi was asking about, I think we know that this isn't just harmless because at the end of the Turain, the first day of the Fatico hearing, Judge Gardefi, the government is willing to say, well, we're just going to sit down and not call anyone else. And Judge Gardefi says, well, I think you really do need to call someone else because on the basis of this record, there hasn't been any opportunity for Cherry's attorneys to cross-examine any of this trial, you know, to morten or any of this trial evidence. So I think we know clearly from what Judge Gardefi says about that. But that's a process point because he's otherwise going to be relying on trial testimony that Cherry's lawyer was unable to examine. It's not that he's saying that there's – the prior evidence from the trial was unpersuasive or unimpactful. It's that Cherry had no opportunity to go at it. Well, the reason why you have process is because process informs the substantive idea. And, in fact, that's just what's said in that Turain instruction I quoted before as well, that you don't know what it is. Second, quickly, I wanted to address what my friend for the government was suggesting about when Turain was pleading the fifth or not in response to questions. Because, in fact, he pleads it – and you can see for yourself – he pleads it throughout the cross-examination, throughout the direct testimony. I think the government walked away from that sort of being significant to the relevant question. Well, I know, but I just want to just talk to – because one of the larger questions is whether, in a sense, Turain's attorney sort of adopted by silence some of the suggestions of Gardefi about this alternative mode. And I think that that argument really proves too much, especially in light of what my friend for the government was just saying about these objections. If you look – I'm not going to read it all now, but it's on page 16 and 17 of the blue brief. I quote a couple of instances where, even on cross-examination, my friend for the government is asking questions to Turain that are clearly incorrect invocations of the fifth. I mean, about what Lind said – that was the district court attorney – said to him, you know, by Ms. Nichols, you plead the fifth as to what Mr. Lind said to you. Answer, you know, correct by Ms. Nichols. You plead the fifth as to whether inmates can call each other. Answer, other inmates, you mean. Question, yes. Answer, I plead the fifth. And in none of those cases is my friend for the government saying, well, this is an improper invocation. And yet we don't assume from this that my friend for the government is adopting the idea that this is a correct assumption of the Fifth Amendment. She's just letting it go, and that's fine. But we're not assuming just from the silence that she's agreeing or affirming. And really the final thing I just want to say is this overarching question. Do we have a Jacobson remand, as Judge Calabresi was suggesting? Do we have a process where we want in-camera proceedings, as Judge Engelmeyer was suggesting? I think whatever we do, it's necessary to provide the district court with further guidance as to what the procedure should be. When I first got up here, I think some of my first words were this two-part procedure about what needs to be done. But it's clear what happened is that this two-part procedure was not very clearly followed. Exactly why Trey was even invoking the fifth was not very clearly stated. We're wondering whether we need to assume things from the silence of Terrain's counsel. And we shouldn't have to be in that position. So you obviously know what I think you should do. But whatever you do, I would ask that you take this opportunity both to resolve the open question about future perjury, but also to provide the lower courts with guidance going forward. Thank you very much. Thank you very much, Mr. Nooter. Thank you to both sides for your helpful arguments. The matter is submitted and we'll take it under advisement.